OWENS vs. THE STATE.

CERTIORARI: (1.) *County Judge may allow* certiorari *to J. P. in criminal cases.* (3.) *What errors may be inquired into upon such writ.* (4) *Proper judgment at the circuit in such case.*

JURISDICTION—JUSTICE'S COURT: (2.) *Jurisdiction contingent on absence of municipal judge; how properly shown by record.*

1. Whether or not the county judge is empowered to allow a writ of *certiorari* in a criminal action under sec. 31, ch. 140, R. S. (a point not decided), he is so empowered by sec. 18 of the "Act to provide for the election of judges," etc., approved June 29th, 1848 (found in the appendix to the R. S. 1858, pp. 1039–1042), that section appearing to be still in force.
2. Where a justice of the peace in a certain city was authorized to take jurisdiction of an action only in case of the " absence, sickness or other inability" of a municipal judge, and the verified complaint in the action alleges, upon information and belief, that said judge " is now absent and has been absent more than one day " from said city, "and is in the city of Chicago, Ill.:" *Held,* that this was sufficient statement and proof of such absence to authorize the justice to take jurisdiction.
3. In a criminal action in justice's court, error in overruling a plea of former conviction does not go to the jurisdiction, and cannot be inquired into on a common law *certiorari.*
4. On *certiorari* regularly allowed and returned, the circuit court should affirm or reverse the judgment of the justice, and not dismiss the writ.

ERROR to the Circuit Court for *Iowa* County.

The plaintiff in error seeks to reverse a judgment of the circuit court dismissing a writ of *certiorari* issued out of said court at his suit, to a justice of the peace of said county. The case will appear from the opinion.

*E. P. Weber*, for plaintiff in error.

*The Attorney-General*, for the state.

DIXON, C. J. This was a common law writ of *certiorari*, issued out of the circuit court for the county of Iowa to a justice of the peace of the city of Mineral Point in that county, to bring up the record and proceedings in an action for assault and battery, instituted before the justice in the name of the state against the plaintiff in error, and in which the plaintiff in error had been convicted and adjudged to pay a fine of ten dollars, with costs of prosecution. The writ of *certiorari* was allowed by the county judge of Iowa county; and the first objection is, that the county judge had no authority to do so. It is said that the provisions of section 31, chap. 140, R. S., relate only to civil, and not to criminal actions. This may or may not be so. It is a point not now necessary to be decided. Section 18 of the act approved June 29th, 1848, entitled "An act to provide for the election of judges, and for the classification and organization of the judiciary of the state of Wisconsin," clearly confers this power. There is no ground for saying that the authority there conferred is limited to civil, and does not extend to criminal, actions or proceedings; and the only question would seem to be, whether that act, or so much of it as relates to the point under consideration, still remains in force. The act, so far as we can ascertain or determine, has never been directly or in terms repealed. Some of its provisions have become obsolete and inoperative by reason of subsequent inconsistent and conflicting enactments; but as to the section in question, we believe there has been no such subsequent legislation. The act was published in the "Appendix" to the Revised Statutes of 1849, p. 759, as a part of the then existing statutory law of the state aside from that found in the revision. It was not repealed at the time those statutes were enacted. It was indexed and referred to by the revisers as a part of the law still in force. Page 819, Title "COMMISSIONER'S COURT." And upon the revision

in 1858, which resulted in the Revised Statutes now in force, the same things took place. The Revised Statutes of 1849 were repealed, but not this act, which did not constitute part of them. R. S. 1858, ch. 191, sec. 1. Neither was it repealed by express reference to title and time of passage, as was done in all other cases, where such was the intention of the legislature. On the contrary, it was preserved and published in the "Appendix," as upon the former revision, and indexed and referred to as the still existing law. R. S. 1858, pp. 1039, 1123, Title "COMMISSIONER'S COURT." Our conclusion, therefore, is, that the 18th section is yet in full force, and that by virtue of it the county judge was authorized to allow the writ.

In thus considering the act, we cannot forbear remarking it as a most singular instance of the sparing hand of legislation in this state, that there should still be found upon our books a statute so old as this, the work of the first legislative body assembled after our organization and admission as a state. It stands, we believe, without rival or peer, as the only statute of the state of Wisconsin which has been permitted to attain the venerable age of nearly twenty-three years. This leads to serious reflections as to the untimely fate of most of our legislative enactments, not only the companions of this, which have long since "faded and gone," but also those which have come after, a numerous progeny, nearly all of which seem to have been infected with some fatal disease, which was very soon to work their destruction. They have perished mostly in infancy, the average period of life being about one year; but those which have survived that period have seldom attained the age of ten or twelve. There must be something irregular and wrong in the birth and parentage, where such mortality prevails among the offspring—some malady and restlessness in the body politic, which demand the most careful attention and cure. The act under

consideration is certainly entitled to our utmost veneration and respect by reason of that health and vigor that have enabled it to outlive so many thousands of its brethren, which have fainted and fallen by the way.

These remarks are of course made, not without a strong suspicion that there may yet be found some act which has escaped our vigilance, by which the act in question has been repealed.

The writ having been regularly allowed and issued, the next inquiry is, whether the justice to whom the complaint was made had jurisdiction of the case, it appearing that the offense was committed within the limits of the city of Mineral Point. Section 2 of chapter III of the charter of that city reads as follows: "There is hereby created and established a 'Municipal Court' in said city, to be known and called by that name. The municipal judge shall be the judge of said court, and have and possess all the powers of a justice of the peace of the county; the said court shall have jurisdiction throughout the county of all civil actions of which a justice of the peace by law has jurisdiction, *and exclusive jurisdiction of all criminal causes and matters of which a justice of the peace has jurisdiction, when the cause shall originate within the limits of the city,* and also exclusive jurisdiction of all causes growing out of the violation of any ordinance of said city, and of all such cases wherein the city is a party, as are within the jurisdiction of a justice of the peace; *provided,* that any justice of the peace in said city shall have jurisdiction of the causes last aforesaid, *in case of absence, sickness, or other inability of said municipal judge,* or in case of a vacancy in such office, until the same shall be filled."

The complaint before the justice, in addition to the facts constituting the offense charged, contained the following allegation: "This deponent further says, that

he is informed and believes that the Hon. William T. Henry, municipal judge of the city of Mineral Point, Iowa county, Wisconsin, is now absent from said city of Mineral Point, and has been absent more than one day from the said city, and is in the city of Chicago, Illinois."

We are of opinion that this was a sufficient statement and proof of the absence of the municipal judge to authorize the justice to take jurisdiction, and that there existed no valid objection on that ground.

Another ground upon which it is claimed that the judgment of the justice should have been reversed by the circuit court is, that the justice improperly overruled the plea of former conviction put in by the plaintiff in error before him, and sustained the demurrer thereto on the part of the state. This was obviously no error, if error it was, going to the jurisdiction of the justice, and therefore not a matter to be inquired of upon the common law writ of *certiorari*, which reaches only jurisdictional defects. The remedy for such errors and mistakes is by appeal. The doctrine has long been settled in this state, that where the party aggrieved has any other remedy, it is only errors and abuses going to the jurisdiction which will be examined upon this writ. 3 Wis. 736; 5 Wis. 191; 19 Wis. 419; id. 591; 11 Wis. 389; 12 Wis. 317.

We have thus considered the points presented in argument, the same as if the judgment of the circuit court were regular in form. But it is not. The circuit court, after argument and consideration, dismissed the writ, instead of affirming the judgment of the justice. This was improper, as was held by this court in two recent cases: *Morse v. Spees*, and *McNamara v. Spees*, 25 Wis. 543, 539.

*By the Court.*—The judgment dismissing the writ is reversed, and the cause remanded with directions to enter judgment affirming that of the justice.

On a motion for a re-hearing, the counsel for the plaintiff in error contended that it is *res adjudicata* in this state that a justice's court is not a court of record and does not proceed according to the course of the common law (*Cox v. Groshong*, Burnett, 150); and that a *certiorari* to such a court performs precisely the same office as a writ of error to a court of record, and it is the duty of the supervisory court, upon the return of the writ, to examine and inquire not only whether the inferior tribunal has exceeded its jurisdiction, and whether it has proceeded regularly, according to the requirements of the statute creating it, but also, whether questions of law decided by it were correctly decided, and whether there was some evidence to warrant the judgment rendered. As to the English law on the subject, he cited *Rex v. Lloyd*, 2 Strange, 996; *Rex v. Killett*, 4 Burr. 2063; *Rex v. Read*, 2 Douglass, 486; *Rex v. Salomons*, 1 Term, 251; *Rex v. Bryan*, Andrews, 81; *Peat's Case*, 6 Mod. 228; *Rex v. Thompson*, 2 Term, 18; *Rex v. Lovet*, 7 id. 153; *Rex v. Clarke*, 8 id. 222; *Rex v. Bass*, 5 id. 251. As to the American doctrine, he cited *Brooklyn v. Patchen*, 2 Wend. 377 and 8 id. 47; *Durkee v. Brackett*, 1 Caines, 501; *Delamater v. Borland*, id. 593; *Schoonmaker v. Traus*, 2 id. 110; *Felter v. Mulliner*, id. 384; *Leonard v. Sunderlin*, 3 id. 136; *Ehel v. Smith*, id. 187; *Fisher v. Chandler*, 1 Johns. 505; 2 id. 182, 195; 3 id. 146, 435; 15 Wend. 490; 18 id. 141; 17 id. 211; 25 id. 311; *Comm. v Ellis*, 11 Mass. 466 : *Bath Bridge Co. v. Magoun*, 8 Greenl. 293; *Ruhlman v. Comm.*, 5 Binney, 27; *Phillips v. Phillips*, 3 Halst. 123; *Trigg v. Boyce*, 4 Hayw. 100; *Williamson v. Carnan*, 1 Gill & J. 184; *Mackaboy v. Comm.*, 2 Va. Cas. 270; *Bob v. The State*, 2 Yerg. 173; *Duggen v. McGruder*, Walker, 112, and other cases. To the point that the right of the circuit court to review the justice's judgment on *certiorari* was not affected by the existence of the remedy by appeal, he cited *Comstock v. Porter*, 5 Wend. 98;

*Starr v. Trustees*, 6 id. 566; *Wood v. Randall*, 5 Hill, 269; *Kingsland v. Gould*, 1 Halst. 161; *Krumeick v. Krumeick*, 2 Green, 39; *Burrows, v. Vandevier*, 3 Ham. 383; *McCaskill v. McCaskill*, T. U. P. Charlt. 151. Counsel then argued that the justice erred in over-ruling the plea of *autrefois acquit;* and his judgment should have been reversed on that ground.

The motion for a re-hearing was denied.